FILED

2016 Jun-21  PM 01:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **JAMES STRONG,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 1:15-CV-1978-VEH** |
| | ) |
| **BLUE BELL CREAMERIES,** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION AND ORDER

This is a civil action filed by the Plaintiff, James Strong, against the Defendant, Blue Bell Creameries. The Complaint alleges that the Defendant discriminated against Strong on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, *et seq*. ("Title VII"), and 42 U.S.C. § 1981. (Count One). The Complaint also alleges that the Defendant has discriminated against Strong due to his disability, and failed to reasonably accommodate his disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112, *et seq*. (the "ADA"), and the amendments thereto.[1] Both counts arise out of the Plaintiff's employment with the Defendant.

---

[1] The Complaint actually alleges a violation of the Americans with Disabilities Act Amendments Act of 2008 (the "ADAAA"), which broadens the definition of "disability" under the ADA.

The case comes before the Court on the Defendant's Partial Motion to Dismiss the Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 8). For the reasons stated herein, the motion will be **GRANTED**. The Plaintiff's constructive discharge claim will be **DISMISSED**.

## I.   STANDARD

Generally, the Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). However, to survive a motion to dismiss brought under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*").

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556) ("*Iqbal*"). That is, the complaint must include enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation and footnote omitted). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557 (citation omitted).

2

Once a claim has been stated adequately, however, "it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563 (citation omitted). Further, when ruling on a motion to dismiss, a court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citing *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006)).

## II.   ALLEGATIONS IN THE COMPLAINT

The following factual allegations appear in the Complaint:

7.     Strong was employed by the Defendant for fourteen-years. He began working for the Defendant as a general laborer and progressed up the line to Yard-Dog and then over the road Truck Driver. Strong worked as an over the road truck driver from 2005 until his forced resignation in the summer of 2014.

8.     Approximately two-years before he resigned his employment, Strong was diagnosed with Type II-Diabetes. Based on his diagnosis he is substantially limited in the major life activity of endocrine function with or without regard to the ameliorative effects of mitigating measures. Also, because he informed his employer of his condition he was "perceived" and/or "regarded as" disabled.

9.     Strong's condition requires him to urinate on a frequent basis which necessitates a restroom break every hour or so. Strong made a request to the Defendant, which was granted, that he be allowed to take more frequent restroom break[s]. This accommodation had no impact whatsoever on Strong's job performance.

10.    In March 2014, Strong was suspended from work for two-days allegedly because he took too long delivering a load. Even though

Strong had maintained and provided meticulous records explaining why the load was delayed[,] he was still suspended. An individual who does not suffer from diabetes[,] and ran the same route the day in question[,] and was also delayed[,] suffered no discipline.

11.     Numerous times since Strong asked for and received an accommodation, the Defendant remarked that he made too much overtime. In truth Strong's overtime hours are less than many drivers at the facility. Moreover, he always maintained a trip log for every delay that occurred during a run.

12.     On May 16, 2014, the Defendant informed Strong that because of his overtime numbers he was being demoted back to a stacking pallets in the warehouse (Palletizer). This work is very labor intensive and requires the employee to work in freezing conditions.

13.     Due to his diabetes, Strong knew that he was not physically able to perform the duties and responsibilities of a Palletizer. Strong expressed to the Defendant that working in the warehouse would be deleterious to his health, but his concerns were ignored.

14.     Strong did as he was told and began working in the warehouse. Upon information and belief, the Defendant knew that Strong could no longer physically work as a Palletizer and hoped that he would resign his employment.

15.     After about two-weeks of working as a Palletizer, Strong suffered complications from his diabetes, to include neuropathy in his feet which required his hospitalization. While hospitalized[,] Strong contracted pneumonia which exacerbated his condition causing him to remain hospitalized for an extended period. Upon his release from the hospital, Strong turned in his resignation.

16.     White over the road Truck Drivers [who] had more overtime than Strong were not demoted. Strong has personal knowledge of this fact because the overtime list is posted each week with the totals for all over the road Truck Drivers who have worked in excess of 40 hours per

week.

17.    Strong was treated less advantageously . . . because of his race [African-American] and/or because of his disability [Type II-Diabetes].[2]

(Doc. 1 at 3-5).

## III.    ANALYSIS

### A.    The Plaintiff Exhausted His Administrative Remedies

The Defendant's motion argues that, because the Plaintiff failed to mention his separation from the Defendant in his initial charge of discrimination to the EEOC, any claim he may have for "constructive discharge" must fail.

Prior to filing a Title VII or ADA claim a plaintiff must exhaust certain administrative remedies. *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002); 42 U.S.C. § 2000e-5; *Fry v. Muscogee Cty. Sch. Dist.*, 150 F. App'x 980, 981 (11th Cir. 2005) ("Before filing suit under the ADA, a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC."); 42 U.S.C.A. § 12117(a). "The administrative process is initiated by timely filing a charge of discrimination." *Joe's Stone Crabs*, 296 F.3d at 1271.

In the instant case, the Plaintiff filed his Charge of Discrimination with the EEOC on May 22, 2014. (Doc. 1-1 at 4). In pertinent part, the charge states:

---

[2]  The brackets in this sentence appear in the original.

I.      I have been employed with the Respondent for approximately 14 (fourteen) years. I began working as a general laborer and progressed up the line to Yard Dog and then over the road Truck Driver. I have been an over the road Truck Driver since 2005.

II.     Approximately two-years ago, I was diagnosed with Diabetes. Based on my condition I am a substantially limited in the major life activity of endocrine function with or without regard to the ameliorative effects of mitigating measures. Also, because I informed my employer of my condition I am "regarded as" disabled.

III.    My condition requires me to urinate on a frequent basis which necessitates a restroom break every hour or so. As an over the road Truck Driver, my employer has instructed me that I am to only take a restroom break every three hours. I requested that I be allowed to take more frequent restroom breaks and was granted this accommodation as it had no impact whatsoever on my job performance.

IV.     In March 2011, I was suspended from work for two-days allegedly because I took too long delivering a load. Even though I had maintained and provided meticulous records explaining why the load was delayed I was still suspended. An individual who does not suffer from diabetes that had the same route as me on the day in question and was also delayed suffered no discipline.

V.      Every since I informed the Respondent of my diabetes diagnosis, I have been constantly harassed about working too much overtime. In truth my overtime hours are less than many drivers at the facility. Moreover, I always maintain a trip log for every delay that occurs during a run which might cause me to be late.

VI.     On May 16, 2014, I was informed by the Respondent that because of my overtime numbers I was being demoted back to a stacking pallets in the warehouse (Palletizer). This work is very labor intensive and difficult. I worked as a Palletizer for 5 years before I became a Truck

Driver and doubt that my condition would allow me to work in that role now. Upon information and belief, the Respondent knows that I can no longer physically work as a Palletizer and will be forced to resign.

VII.   White over the road Truck Drivers have more overtime than me but have not been demoted. I know this because the overtime list is posted each week with the totals for all over the road Truck Drivers who have worked in excess of 40 hours per week.

VIII.  I have been discriminated against on the basis of my disability [(Diabetes)] and my race (African-American).

(Doc. 1-1 at 4-5). This charge was filed <u>before</u> the Plaintiff resigned from his employment. Accordingly, there is no mention of his separation from the Defendant. The charge was never amended to include information regarding the Plaintiff's resignation. No other charge of discrimination was ever filed.

Importantly, "[n]ot all acts complained of [in the judicial complaint] . . . need have been included in the EEOC charge." *Robinson v. Regions Fin. Corp.*, 242 F. Supp. 2d 1070, 1079 (M.D. Ala. 2003) (Thompson, J.). Instead, "[a] 'plaintiff's judicial complaint is limited by the scope of the EEOC investigation <u>which can reasonably be expected to grow out of the charge of discrimination</u>.'"  *Gregory v. Georgia Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (emphasis added) (quoting *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir.2000) (internal quotation and citation omitted)). In this case, the EEOC charge clearly states that work as a Palletizer "is very labor intensive and difficult," that the

Plaintiff "doubt[s] that [his] condition would allow [him] to work in that role now," and that the Defendant, "knows that I can no longer physically work as a Palletizer and will be forced to resign." (Doc. 1-1 at 5). The investigation by the EEOC of the allegations in the charge would have included the discovery and investigation of the conditions and circumstances under which the Plaintiff resigned.[3] *See Booth v. Pasco Cty., Fla.*, 829 F. Supp. 2d 1180, 1193 (M.D. Fla. 2011) (judicial claim based on transfer which occurred after filing of EEOC charge not barred where charge explicitly stated that "threats of transfers are always being thrown at me"– one would expect the alleged involuntary transfer to be discovered upon the EEOC's investigation of the charged conduct)[4]; *Browning v. AT & T Paradyne Corp.*, 838 F. Supp. 1568, 1572 (M.D. Fla. 1993) (judicial claim for unlawful discharge, when discharge occurred after EEOC charge was filed and which plaintiff attributed to a bad performance review, was not barred where EEOC charge had alleged age

---

[3] This is especially true since the EEOC investigation did not end until 12-13 months after the Plaintiff resigned. (Doc. 16 at 10).

[4] *Booth* was a retaliation case. *Booth* also addressed an alternative reason for finding that some of the judicial claims were not barred, stating "[a] second exception allows courts to hear charges not contained in an EEOC complaint if those claims are for retaliation against the employee for filing an EEOC charge." *Booth*, 829 F. Supp. 2d at 1194. The Defendant correctly argues that retaliation claims, in this way, are treated "uniquely" from other claims. (*See* doc. 19 at 8-9). The fact that this alternative basis also exists does not detract from the initial analysis provided in *Booth* and discussed in the parenthetical above.

8

discrimination based in part on unwarranted negative performance evaluation.).[5]

Accordingly, the Court finds that any claim for constructive discharge is not

---

[5] The Court is particularly persuaded by the following analysis set out in the *Browning* opinion:

> The Eleventh Circuit relies on two criteria in its determination of whether discrimination claims in a judicial complaint, which were not previously alleged in an EEOC charge, are to be considered "within the scope" of the EEOC charge. The first criteria is whether the subsequent acts are "like or reasonably related to" the allegations contained in the EEOC charge. *Turner v. Orr*, 804 F.2d 1223, 1226. The second criteria is whether the subsequent acts "could reasonably be expected to grow out of" the investigation of the pending EEOC charges. *Id.*; *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir.1988); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.1970).

> This Court finds that Plaintiff Hanna's claim of unlawful discharge is reasonably related to the incidents described in the EEOC charges, and could reasonably be expected to grow out of the investigation of the pending EEOC charges. The fact that Plaintiff Hanna stated in his affidavit, which was connected with the EEOC questionnaire, that he felt that Bazzone's alleged discriminatory behavior was an attempt to make him quit or retire is undoubtedly like or reasonably related to a claim for unlawful discharge. Plaintiff Hanna's consensus of the situation was that Bazzone was attempting to remove him from his employment which is related to being discharged from employment.

> Along this same reasoning, Plaintiff Hanna's alleged unlawful discharge from his employment can very reasonably be expected to grow out of a charge of discrimination. This is especially so since Plaintiff Hanna viewed the alleged discriminatory acts as a ploy to remove him from his employment, and since the termination from his employment was predicated on the very behavior that Plaintiff Hanna complained of. Plaintiff Hanna, in an indirect manner, predicted the eventual termination of his employment with Defendant AT & T Paradyne. The termination can be considered the natural end result of the alleged discriminatory behavior that Plaintiff Hanna complained of, ie., the termination grew out of the discriminatory behavior.

*Browning*, 838 F. Supp. at 1572. Like in *Browning*, the Plaintiff in the instant case predicted that the demotion to Palletizer would force him to resign. His resignation could be considered the natural end of the alleged discriminatory demotion.

administratively barred.

**B.** **The Complaint Does Not Adequately State a Claim for Constructive Discharge**.[6]

The Eleventh Circuit has noted:

"Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." *Munday v. Waste Mgmt. of North America, Inc.*, 126 F.3d 239, 244 (4th Cir.1997); *accord Young v. Southwestern Savings and Loan Ass'n*, 509 F.2d 140, 144 (5th Cir.1975) ("The general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee.").[7] A plaintiff must show "the work environment and conditions of employment were so unbearable that a reasonable person in that person's position would be compelled to resign." *Virgo v. Riviera Beach Assoc., Ltd.*, 30 F.3d 1350, 1363 (11th

---

[6] The Defendant argues:

The Complaint does not appear to allege a termination claim. There is no separate count relating to a termination claim nor is there any allegation that the Plaintiff was terminated because of his race or alleged disability. The Plaintiff states in the Complaint that he resigned (Doc. 1 at ¶ 15), but there is no attempt to set out the elements of a constructive discharge claim. Out of an abundance of caution, however, Blue Bell seeks to dismiss any constructive discharge claim, as the Complaint fails to state any such claim.

(Doc. 8 at 5). The Complaint alleges race and disability discrimination. It alleges in the "facts" section that the Plaintiff was suspended, demoted, and forced to resign as a result of this discrimination. The Court deems this to be sufficient to put the Defendant on notice as to the specific acts upon which each count of the Complaint is based.

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Cir.1994); *see also Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir.1997); *Kilgore v. Thompson & Brock Mgmt., Inc.*, 93 F.3d 752, 754 (11th Cir.1996). Establishing a constructive discharge claim is a more onerous task than establishing a hostile work environment claim. *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir.1992) ("To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment."), *aff'd*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); *see also Steele v. Offshore Shipbuilding*, Inc., 867 F.2d 1311, 1316–18 (11th Cir.1989) (affirming district court's finding that plaintiffs established that they were subjected to a hostile work environment but were not constructively discharged); *Huddleston v. Roger Dean Chevrolet, Inc.*, 845 F.2d 900, 905–06 (11th Cir.1988) (same).

*Bryant v. Jones*, 575 F.3d 1281, 1298-99 (11th Cir. 2009).

In the instant case, the Complaint explains the difficult conditions under which a Palletizer is expected to work, and explains that the Plaintiff "knew that he was not physically able to perform those duties and responsibilities." (Doc. 1 at 4). However, the Complaint lacks any factual allegations that the Defendant knew that the Plaintiff could not perform the functions of the position and deliberately placed him into that position to force him to resign. Although, as alleged in the Complaint, the Defendant knew the Plaintiff had diabetes, there are no allegations that the Defendant knew that that condition, which the Plaintiff alleges only required him to take frequent bathroom breaks, would make his working conditions <u>so</u> intolerable that he would be

forced to quit.[8] Too, there are no allegations that the position ultimately turned out to be intolerable. Although the Complaint alleges that two weeks after starting the job, the Plaintiff "suffered complications from his diabetes, to include neuropathy in his feet which required his hospitalization," there is no allegation that the Palletizer position <u>caused</u> the complications. While these allegations create the <u>possibility</u> of a constructive discharge, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

Finally, the law in the Eleventh Circuit is clear that "[a] constructive discharge will generally not be found if the employer is not given sufficient time to remedy the situation." *Kilgore v. Thompson & Brock Mgmt., Inc.*, 93 F.3d 752, 754 (11th Cir.1996). Even if the position ultimately turned out to be intolerable, there are no allegations in the Complaint that, after working in the position, the Plaintiff explained to the Defendant the nature of the problem, and gave the Defendant sufficient time

---

[8] The Defendant labels the Complaint's allegation that "[u]pon information and belief, the Defendant knew that Strong could no longer physically work as a Palletizer," as mere "speculation." (Doc. 19 at 4, quoting doc. 1 at 4-5). The Court agrees. The Complaint states that <u>after</u> he was assigned to the position he "expressed to the Defendant that working in the warehouse would be deleterious to his health, but his concerns were ignored." (Doc. 1 at 4, ¶13). These allegations, if proven to be true, do not establish that the Defendant was aware, at the time it assigned him to this position, that the work as a Palletizer may cause him health problems.

to remedy it. Instead, exactly the opposite is true. The Complaint alleges that the Plaintiff resigned "[u]pon his release from the hospital." (Doc. 1 at 5, ¶ 15). *See Robinson v. Koch Foods of Alabama*, No. 2:13-CV-557-WKW, 2014 WL 4472611, at *3 (M.D. Ala. Sept. 11, 2014) (dismissing constructive discharge claim on motion for judgment on the pleadings where plaintiff resigned because of sexual harassment by a co-worker on the same day she reported the harassment; holding that "[the] constructive discharge claim fails as a matter of law because there is no possibility she can prove that she gave [the defendant] sufficient time to remedy the situation.").

For the foregoing reasons, the Court holds that the Plaintiff has failed to properly allege facts which plausibly support a claim for wrongful discharge. Accordingly, any such claim is **DISMISSED**.[9]  This dismissal is without prejudice, since the time for the Plaintiff to amend his Complaint has not yet expired.

**DONE** and **ORDERED** this 21st day of June, 2016.

VIRGINIA EMERSON HOPKINS
United States District Judge

---

[9] In his response to the Motion to Dismiss, the Plaintiff does not ask for leave to amend his Complaint.

13