IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JAMES STRONG, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No.: 1:15-CV-1978-VEH |
| | ) |
| BLUE BELL CREAMERIES, | ) |
| | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This case comes before the court on the Plaintiff's Motion to Amend the Complaint, which was filed on July 5, 2016. (Doc. 31). The Defendant filed an opposition to the motion, arguing that the proposed amendment would be futile. (Doc. 32). The time for the Plaintiff's reply to his motion has expired[1], and no reply has been filed. For the reasons stated herein, the motion will be **DENIED**.

**I.     PROCEDURAL HISTORY**

This is a civil action filed by the Plaintiff, James Strong, against the Defendant, Blue Bell Creameries. The Complaint alleges that the Defendant discriminated against

---

[1] This Court's "Uniform Initial Order," entered in this case on February 18, 2016, provides that the reply brief was due "no later than seven (7) **calendar** days after the date on which the opponent's responsive brief was due." (Doc. 22 at 23) (emphasis in original). The Defendant's response to the motion was due on July 19, 2016. (*See* doc. 22 at 23–"The opponent's responsive brief shall be filed no later than fourteen (14) **calendar** days [after the motion is filed].") (emphasis in original).  The reply brief was therefore due on July 26, 2016.

Strong on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, *et seq*. ("Title VII"), and 42 U.S.C. § 1981. (Count One). The Complaint also alleges that the Defendant has discriminated against Strong due to his disability, and failed to reasonably accommodate his disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112, *et seq*. (the "ADA"), and the amendments thereto.[2] Both counts arise out of the Plaintiff's employment with the Defendant.

On January 14, 2016, the Defendant filed a Partial Motion to Dismiss the Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 8). In particular, the Defendant sought to dismiss any potential "constructive discharge" claim. The Court granted the motion, writing, in pertinent part:

> The Eleventh Circuit has noted:
>
> "Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." *Munday v. Waste Mgmt. of North America, Inc.*, 126 F.3d 239, 244 (4th Cir.1997); *accord Young v. Southwestern Savings and Loan Ass'n*, 509 F.2d 140, 144 (5th Cir.1975) ("The general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is as liable for any

---

[2] The Complaint actually alleges a violation of the Americans with Disabilities Act Amendments Act of 2008 (the "ADAAA"), which broadens the definition of "disability" under the ADA.

> illegal conduct involved therein as if it had formally discharged the aggrieved employee.").[3] A plaintiff must show "the work environment and conditions of employment were so unbearable that a reasonable person in that person's position would be compelled to resign." *Virgo v. Riviera Beach Assoc., Ltd.*, 30 F.3d 1350, 1363 (11th Cir.1994); *see also Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir.1997); *Kilgore v. Thompson & Brock Mgmt., Inc.*, 93 F.3d 752, 754 (11th Cir.1996). Establishing a constructive discharge claim is a more onerous task than establishing a hostile work environment claim. *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir.1992) ("To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment."), *aff'd*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); *see also Steele v. Offshore Shipbuilding*, Inc., 867 F.2d 1311, 1316–18 (11th Cir.1989) (affirming district court's finding that plaintiffs established that they were subjected to a hostile work environment but were not constructively discharged); *Huddleston v. Roger Dean Chevrolet, Inc.*, 845 F.2d 900, 905–06 (11th Cir.1988) (same).

*Bryant v. Jones*, 575 F.3d 1281, 1298-99 (11th Cir. 2009).

In the instant case, the Complaint explains the difficult conditions under which a Palletizer is expected to work, and explains that the Plaintiff "knew that he was not physically able to perform those duties and responsibilities." (Doc. 1 at 4). However, the Complaint lacks any factual allegations that the Defendant knew that the Plaintiff could not perform the functions of the position and deliberately placed him into that position to force him to resign. Although, as alleged in the Complaint, the Defendant knew the Plaintiff had diabetes, there are no allegations that the Defendant knew that that condition, which the Plaintiff alleges only required him to

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

take frequent bathroom breaks, would make his working conditions <u>so</u> intolerable that he would be forced to quit.[4] Too, there are no allegations that the position ultimately turned out to be intolerable. Although the Complaint alleges that two weeks after starting the job, the Plaintiff "suffered complications from his diabetes, to include neuropathy in his feet which required his hospitalization," there is no allegation that the Palletizer position <u>caused</u> the complications. While these allegations create the <u>possibility</u> of a constructive discharge, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

Finally, the law in the Eleventh Circuit is clear that "[a] constructive discharge will generally not be found if the employer is not given sufficient time to remedy the situation." *Kilgore v. Thompson & Brock Mgmt., Inc.*, 93 F.3d 752, 754 (11th Cir.1996). Even if the position ultimately turned out to be intolerable, there are no allegations in the Complaint that, after working in the position, the Plaintiff explained to the Defendant the nature of the problem, and gave the Defendant sufficient time to remedy it. Instead, exactly the opposite is true. The Complaint alleges that the Plaintiff resigned "[u]pon his release from the hospital." (Doc. 1 at 5, ¶ 15). *See Robinson v. Koch Foods of Alabama*, No. 2:13-CV-557-WKW, 2014 WL 4472611, at *3 (M.D. Ala. Sept. 11, 2014) (dismissing constructive discharge claim on motion for judgment on the pleadings where plaintiff resigned because of sexual harassment by a co-worker on the same day she reported the harassment; holding that "[the] constructive discharge claim fails as a matter of law because there is no possibility she can prove that she gave [the defendant] sufficient time to remedy the situation.").

For the foregoing reasons, the Court holds that the Plaintiff has

---

[4] The Defendant labels the Complaint's allegation that "[u]pon information and belief, the Defendant knew that Strong could no longer physically work as a Palletizer," as mere "speculation." (Doc. 19 at 4, quoting doc. 1 at 4-5). The Court agrees. The Complaint states that <u>after</u> he was assigned to the position he "expressed to the Defendant that working in the warehouse would be deleterious to his health, but his concerns were ignored." (Doc. 1 at 4, ¶13). These allegations, if proven to be true, do not establish that the Defendant was aware, at the time it assigned him to this position, that the work as a Palletizer may cause him health problems.

4

failed to properly allege facts which plausibly support a claim for wrongful discharge. Accordingly, any such claim is **DISMISSED**.[5] This dismissal is without prejudice, since the time for the Plaintiff to amend his Complaint has not yet expired.

(Doc. 29 at 10-13) (emphasis in original) (footnotes from original quote).[6]

The Plaintiff has proffered a proposed "Amended Complaint," the pertinent allegations of which are compared to the original Complaint in the following chart:

---

[5] In his response to the Motion to Dismiss, the Plaintiff does not ask for leave to amend his Complaint.

[6] The original scheduling order provided that "Plaintiff(s) may amend pleadings and/or join additional parties, in accordance with FED. R. CIV. P. 15, until May 20, 2016." (Doc. 25 at 2). In its margin order dated June 9, 2016, the Court stayed "all deadlines." (Doc. 28). The Plaintiff's deadline to amend had already expired at the time of the stay. The Court only intended, but did not say, that all <u>unexpired</u> deadlines be stayed. Accordingly, there arguably is a question as to whether the deadline to amend has passed. Regardless, the Court treats the present motion as, in part, a motion to amend out of time. There being "good cause" for an extension, FED. R. CIV. P. 16(b)(4), the motion is **GRANTED** in that respect only.

| **Allegations in the Original Complaint** | **Changed (in Bold) Allegations in the Proposed Amended Complaint** |
|---|---|
| 12. On May 16, 2014, the Defendant informed Strong that because of his overtime numbers he was being demoted back to a [sic] stacking pallets in the warehouse (Palletizer). This work is very labor intensive and requires the employee to work in freezing conditions. | 12. On May 16, 2014, the Defendant informed Strong that because of his overtime numbers he was being demoted back to a [sic] stacking pallets in the warehouse (Palletizer). This work is very labor intensive and requires the employee to work in freezing conditions. **Strong weighs upward of 450 pounds, has trouble walking even short distances, cannot work a fast paced job, is unable to tell when his feet are too cold due to diabetic neuropathy, has heart trouble, and severe joint pain.** |
| 13. Due to his diabetes, Strong knew that he was not physically able to perform the duties and responsibilities of a Palletizer. Strong expressed to the Defendant that working in the warehouse would be deleterious to his health, but his concerns were ignored. | 13. Due to his diabetes **and its attendant conditions**, Strong knew that he was not physically able to perform the duties and responsibilities of a Palletizer. Strong expressed to the Defendant that **he suffered from diabetes and the other aforementioned health ailments and that these conditions would not allow him to work as a Palletizer. Moreover, it was visible to the casual observer that Strong was ill-suited for any kind of labor intensive work.** |

| | |
|---|---|
| 14. Strong did as he was told and began working in the warehouse. Upon information and belief, the Defendant knew that Strong could no longer physically work as a Palletizer and hoped that he would resign his employment. | 14. **The Defendant ignored Strong's warning that he could not perform the labor intensive work of a Palletizer. Therefore,** Strong did as he was told and began working in the warehouse. Upon information and belief, the Defendant knew that Strong could no longer perform the physically demanding and labor intensive work of a Palletizer. **[ . . . ]** |
| 15. After about two-weeks of working as a Palletizer, Strong suffered complications from his diabetes, to include neuropathy in his feet which required his hospitalization. While hospitalized[,] Strong contracted pneumonia which exacerbated his condition causing him to remain hospitalized for an extended period. Upon his release from the hospital, Strong turned in his resignation. | 15. After about two-weeks of working as a Palletizer, Strong suffered complications from his diabetes which required his hospitalization. While hospitalized Strong contracted pneumonia which exacerbated his condition causing him to remain hospitalized for an extended period. **[ . . . ]** |

|  | **16. Representatives from the Company visited Strong in the hospital and informed him that his job as a Palletizer was still available. Strong again expressed that his physical condition would not allow him to perform the duties associated with that job. The Company never reconsidered Strong for truck driver's position. Therefore, upon his release from the hospital, Strong turned in his resignation because he could no longer physically work in the warehouse. The Defendant knew that Strong could no longer physically perform the warehouse duties and refused to consider him for a truck driver's position, thereby constructively discharging him.** |
|---|---|

## II.   ANALYSIS

As the Eleventh Circuit has noted:

> [A] district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile. This court has found that denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal.

*Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004) (internal quotations and citations omitted).

The Defendant argues that the proposed Amended Complaint would be dismissed if allowed because "[t]he Amended Complaint still fails to allege the basic elements of a constructive discharge claim." (Doc. 32 at 6). Importantly, "notice pleading [does] not

require that the pleader allege a 'specific fact' to cover every element or allege ' with precision' each element of a claim." *Lee v. Caterpillar, Inc.*, 496 Fed. App'x 914, 915 (11th Cir. 2012) (internal citations omitted); *Frazile v. EMC Mortgage Corp.*, 382 Fed. App'x 833, 836 (11th Cir. 2010); *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007). It is however, "still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282–83 (11th Cir. 2007) (internal quotations and citations omitted).[7]

In the Amended Complaint, like in the original Complaint, "there are no allegations that the Defendant knew that that condition [diabetes], which the Plaintiff alleges only required him to take frequent bathroom breaks, would make his working conditions <u>so</u> intolerable that he would be forced to quit." (Doc. 29 at 11-12). The only plausible inferences from the facts as <u>now</u> alleged are that, when it assigned the Plaintiff to the Palletizer position, the Defendant <u>knew</u>: that the Plaintiff had diabetes, needed frequent bathroom breaks, <u>and</u> that he was overweight. The Court finds conclusory and vague the allegation that "it was visible to the casual observer that Strong was ill-suited for any kind of labor intensive work."[8] Similarly, the allegations that the Plaintiff, <u>after</u> he was

---

[7] The Court set out the detailed standard for ruling on a Motion to Dismiss, which is also applicable here, in its previous Memorandum Opinion and Order. (Doc. 29 at 2-3).

[8] The Court has already rejected as speculation the following allegation, which appears in both versions of the Complaint: "Upon information and belief, the Defendant knew that Strong could

assigned to the position, "expressed to the Defendant that he suffered from diabetes and the other aforementioned health ailments and that these conditions would not allow him to work as a Palletizer," do not establish that the Defendant knew that the Plaintiff could not perform the functions of the job <u>when it assigned the Plaintiff to it</u>. Further, as with the original Complaint, the Amended Complaint contains no allegation that the job as a Palletizer actually caused him to suffer the complications from his diabetes.

The Amended Complaint contains a new allegation that the Plaintiff, while in the hospital, told unnamed representatives from the Defendant that his physical condition would not allow him to perform the duties associated with the Palletizer position. (Doc. 31-1 at 5). The Plaintiff then states vaguely that "[t]he Company never reconsidered Strong for truck driver's position. Therefore, upon his release from the hospital, Strong turned in his resignation because he could no longer physically work in the warehouse." (Doc. 31-1 at 5, ¶16). Even assuming that this was sufficient notice of an "unbearable" condition[9], the Amended Complaint lacks specific allegations regarding to whom this was told, whether the persons(s) who were told had the authority to assign the Plaintiff to a different position, and, most importantly, how long before the Plaintiff resigned they

---

no longer perform the physically demanding and labor intensive work of a Palletizer." (Doc. 1 at 4-5, ¶14; doc. 31-1 at 5, ¶14).

[9] These allegations do <u>not</u> establish that the Defendant <u>in fact</u> placed the Plaintiff into a position that was so unbearable that a reasonable person in that person's position would be compelled to resign.  It establishes <u>only</u> that the Plaintiff <u>told</u> the Defendant that his physical condition would not allow him to work in that position any longer.

were told. Without that information, it is impossible to gauge whether the Defendant had sufficient time to remedy the allegedly unbearable conditions in which the Plaintiff was working. Further, other than to vaguely state that the Defendant "refused" to return the Plaintiff to his driver position, the Amended Complaint contains no facts as to what the Defendant's "representatives" did or did not do, or could or could not have done.[10]

## III.   CONCLUSION

For the reasons stated herein, the Plaintiff's Motion to Amend the Complaint is **DENIED**.

**DONE** and **ORDERED** this 27th day of July, 2016.

                                         **VIRGINIA EMERSON HOPKINS**
                                         United States District Judge

---

[10] The Court does not treat these allegations as an entirely new claim of constructive discharge which occurred when the Defendant, after the Plaintiff's hospitalization, kept the Plaintiff in the Palletizer position.