## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **JAMES STRONG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 1:15-CV-1978-VEH** |
| | ) | |
| **BLUE BELL CREAMERIES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

---

## MEMORANDUM OPINION

## I.    INTRODUCTION AND PROCEDURAL HISTORY

This is a civil action filed by the Plaintiff, James Strong, against the Defendant, Blue Bell Creameries. In its original form, the Complaint alleged that the Defendant discriminated against Strong on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, *et seq*. ("Title VII"), and 42 U.S.C. § 1981. (Count One). The Plaintiff also alleged that the Defendant discriminated against him due to his disability, and failed to reasonably accommodate his disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112,

*et seq.* (the "ADA"), and the amendments thereto. (Count Two).[1] Both counts arose out of the Plaintiff's employment with the Defendant.

On June 21, 2016, this Court held that "the Plaintiff has failed to properly allege facts which plausibly support a claim for wrongful discharge," and dismissed any such claim. (Doc. 29 at 13). The Plaintiff subsequently flied a motion to amend the Complaint (doc. 31), which this Court denied (doc. 33 at 11). The parties then agreed that the Complaint alleged only two claims–one for an alleged discriminatory demotion asserted under Title VII and Section 1981 (Count One), and one for constructive discharge asserted under the ADAAA (Count Two). Then, in response to an earlier Motion for Summary Judgment (doc. 34), the Plaintiff admitted that the <u>only</u> remaining claim in this case was Count One, alleging race discrimination under Title VII and Section 1981, based upon his alleged demotion. (Doc. 35 at 3, ¶7; doc. 39 at 2, ¶7).

On January 27, 2017, this case came before the Court on the Motion for Summary Judgment filed by the Defendant. (Doc. 34). In its Memorandum Opinion and Order on that motion (doc. 41), this Court held as follows:

1.    The Defendant's motion for summary judgment is **GRANTED** in favor of the Defendant and against the Plaintiff as to Count One to the extent that Count One is based on anything other than the

---

[1] The Complaint actually alleged a violation of the Americans with Disabilities Act Amendments Act of 2008 (the "ADAAA"), which broadens the definition of "disability" under the ADA.

Plaintiff being placed into a position which did not pay him overtime.

2.      The Defendant's motion for summary judgment is **GRANTED** in favor of the Defendant and against the Plaintiff as to Count Two in its entirety. Count Two is **DISMISSED with prejudice**.

3.      In all other respects, the motion for summary judgment is **DENIED**.

(Doc. 41 at 12) (emphasis in original).

The case now comes before the Court on the Defendant's Second Motion for Summary Judgment (the "Motion"). (Doc. 52). For the reasons stated herein, the Motion will be **GRANTED**.

## II.      STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (internal quotation marks and citation omitted). The party requesting summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those

portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings in answering the movant.[2] *Id.* at 324. By its own affidavits – or by the depositions, answers to interrogatories, and admissions on file – it must designate specific facts showing that there is a genuine issue for trial. *Id.*

The underlying substantive law identifies which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence presented by the non-movant to rebut the moving party's evidence is merely colorable, or is not significantly probative, summary judgment may still be granted. *Id.* at 249.

How the movant may satisfy its initial evidentiary burden depends on whether

---

[2] When *Celotex* was decided, FED. R. CIV. P. 56(e) encompassed this express requirement, but now this concept is covered by the language provided for under FED. R. CIV. P. 56(c).

that party bears the burden of proof on the given legal issues at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden of proof on the given issue or issues at trial, then it can only meet its burden on summary judgment by presenting *affirmative* evidence showing the absence of a genuine issue of material fact – that is, facts that would entitle it to a directed verdict if not controverted at trial. *Id.* (citation omitted). Once the moving party makes such an affirmative showing, the burden shifts to the non-moving party to produce "significant, probative *evidence* demonstrating the existence of a triable issue of fact." *Id.* (citation omitted) (emphasis added).

For issues on which the movant does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. *Id.* at 1115-16. First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand. *Id.* at 1116. In such an instance, the non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.* at 1116-17. When responding, the non-movant may no longer rest on mere allegations; instead, it must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996). The second method a movant in this position may use to

discharge its burden is to provide affirmative *evidence* demonstrating that the non-moving party will be unable to prove its case at trial. *Fitzpatrick*, 2 F.3d at 1116. When this occurs, the non-movant must rebut by offering *evidence* sufficient to withstand a directed verdict at trial on the material fact sought to be negated. *Id.*

## III.   FACTS[3]

The Plaintiff, James Strong, began working for Blue Bell in the year 2000 and, in 2005, took the position of over-the-road Truck Driver. Jimmy L. Crace is the Warehouse/Distribution Manager of the Sylacauga, Alabama Blue Bell Plant out of which the Plaintiff was based. (Doc. 53-1 at 2, ¶1). On May 14, 2014, Crace moved the Plaintiff from his driving job to a palletizer position. In his new position, the Plaintiff received the same hourly rate of pay he received as a Truck Driver. However, Strong claims that he was denied the opportunity to earn overtime wages in this new

---

[3] The facts set out herein are gleaned, in substantial part, from the facts proffered by the parties. To the extent that a party has proffered a fact which is not disputed, it has been included herein <u>exactly</u> as it was proffered, without citation. To the extent that a fact proffered by a party was disputed by another party, the Court first examined the proffered fact to determine whether the evidence cited in support of that fact actually supported the fact <u>as stated</u>. If it did not, the fact was not included. If it did, the Court then looked to whether the evidence cited in support of the dispute actually established a dispute. If it did not, the Court presented the fact as proffered, with citation to the evidence supporting the fact as proffered. If the cited evidence was disputed by contrary evidence, the evidence was viewed, as this Court must, in the light most favorable to the non-movant, with citation to such supporting evidence. If more explanation was needed, the Court included that information in an appropriate footnote. Some facts proffered by the parties, which the Court deemed irrelevant and/or immaterial, may have been omitted. Further, as necessary, the Court may have included additional facts cast in the light most favorable to the non-movant.

position–something he had been able to do as a truck driver.[4]

In his deposition, the Plaintiff testified that when Crace told him that he was moving him to the palletizer position, "he said . . . he was going to either demote me or he was going to fire me. He told me to take some vacation days until they made a decision whether they were going to fire me. He was going to call me back whether they were going to demote me or they were going to fire me." (Doc. 53-2 at 8(28)-9(29)). Eventually, Crace called the Plaintiff back and told him that he was being moved to the palletizer position. In his deposition, the Plaintiff first stated that he could not remember Crace having any discussions with him about overtime. (Doc. 53-2 at 19(70)). Later in his deposition, the Plaintiff stated that Crace told him "he was going to put me in palletizer and that I wasn't going to get nothing [sic] but eight hours a day, and if I got any more than that he was going to fire me." (Doc. 53-2 at 15(56); *see also*, doc. 53-2 at 17(64)-18(65)).

Crace denies that he told the Plaintiff he could not work overtime. In his declaration he states:

---

[4] When the Plaintiff was asked in his interrogatory answers to identify all adverse actions, he responded in his verified answer to Defendant's First Set of Interrogatories that the only adverse employment actions taken against him due to his race were a suspension on March 14 for taking too long to deliver a load; a suspension for accumulating too many hours, and being written up for being late. Furthermore, Plaintiff does not list the transfer to the palletizer position as an adverse employment action. (Doc. 53-3 at 15-16).

I did not tell him he could not work overtime. The Palletizer position is scheduled for nine hours every day and can have more hours depending on the work load. When Strong was transferred to the Palletizer position, I gave him a schedule to work. That schedule provided Strong at least nine hours every day. Attached as Exhibit 28 is a true and correct copy of the schedules I made for Strong when he was transferred to the Palletizer position. The schedules all provide nine hours every day for five work days.

(Doc. 53-1 at 9, ¶12). Indeed, the record contains a schedule showing that Strong was scheduled to work: four nine-hour shifts for the week ending May 31, 2014 (doc. 53-1 at 72); five nine-hour shifts for the week ending June 6, 2014 (doc. 53-1 at 73); five nine-hour shifts for the week ending June 14, 2014 (doc. 53-1 at 74); and five nine-hour shifts for the week ending June 21, 2014 (doc. 53-1 at 75).[5] In addition, the Plaintiff

---

[5] The shifts are actually ten hours long. Because the Defendant refers to them as "nine hour shifts," the Court assumes a one hour unpaid lunch break. The Plaintiff objects to these records, stating:

> Disputed, as the Plaintiff has no personal knowledge of the document offered as evidence. F.R.E. 602. Furthermore, the Defendant's officials cited for this proposition are interested witnesses whose credibility on this and other material facts is at issue in this case. *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 151 (2000) ("[T]he court should give credence to the 'evidence favoring the non-movant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses.'" ); *Hinson v. Clinch County*, 231 F.2d 821, (11th Cir. 2000) (same).

(Doc. 59 at 7, ¶22). Rule 602 of the Federal Rules of Evidence does not require that the <u>Plaintiff</u> have personal knowledge of a <u>document</u> the Defendant is offering into evidence. The Plaintiff also seems to be arguing that Crace's testimony should be disregarding by this Court because he is a company official. As Judge Steele, in the Southern District, has explained:

> Appellate courts have rejected any reading of *Reeves* "as precluding summary judgment where the movant relies on the testimony of interested witnesses."

does not dispute that employees who worked as palletizers regularly received overtime. Some of the employees in the warehouse received as much as 18 to 23 hours in one week for overtime. (Doc. 53-1 at 9, doc. 53-1 at 78).

Crace states that "Strong was removed from driving duties in May 2014 primarily because of problems related to time management. Blue Bell also had complaints about him from its wholesale facilities and members of the public." (Doc. 53-1 at 3, ¶5).[6] In his deposition, the Plaintiff agreed that he was transferred to the

---

*LaFrenier v. Kinirey*, 550 F.3d 166, 168 (1st Cir.2008) (citing cases from the First, Third, Fourth and Sixth Circuits); *accord Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 272 (3rd Cir.2007) ("The fact is that in considering a motion for summary judgment the court should believe uncontradicted testimony unless it is inherently implausible[,] even if the testimony is that of an interested witness."). More specifically, "[w]e do not interpret the quoted language so broadly as to require a court to ignore the uncontroverted testimony of company employees...." *Traylor v. Brown*, 295 F.3d 783, 791 (7th Cir.2002). At any rate, an employer's representative is not an interested witness for purposes of *Reeves*. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 898 (5th Cir.2002) ("The definition of an interested witness cannot be so broad as to require us to disregard testimony from a company's agents regarding the company's reasons for discharging an employee."). Even [if an employee's] affidavit [could] nominally fall within *Reeves*, "where [the plaintiff] was given a clear opportunity to contradict [the defense] affidavit but did not, it would not be obvious error to include the affidavit's contents in the factual mix relevant to summary judgment ." *Wilcox v. State Farm Mutual Automobile Insurance Co.*, 253 F.3d 1069, 1071 (8th Cir.2001).

*Jackson v. Winn-Dixie, Inc.*, No. CIV A 08-0014-WS-C, 2009 WL 256092, at *4 (S.D. Ala. Feb. 2, 2009) (Steele, J.).

[6] The Plaintiff disputes this fact saying that in his deposition "he did not recall receiving any complaints from the Defendant or any member of the public about the way he performed his job." (Doc. 59 at 2) (citing doc. 53-2 at 25(95-96)). The Plaintiff's failure to recall complaints does not mean that they did not occur. Indeed, the Plaintiff does not dispute that there were complaints.

palletizer position "because of the alleged difference in [his] actual time versus [his] scheduled time." (Doc. 53-2 at 7(22); *see also* doc. 53-2 at 9 (30-31) ("Q: Was it during that [first] conversation that he told you that he was thinking about either demoting or firing you because of your difference between your actual driving time and the scheduled time? A. Yes, sir. And he said that's what the reason was for my getting demoted."); doc. 53-2 at 50(195) ("Q. When he told you that they were – I'm trying to remember what you told me earlier today. I guess this is when he first talked to you and told you about that you were going to be demoted or fired, didn't he tell you the reason why that -- at least this morning what you told me was the reason why that was being done was because your actual drive times were greater than your scheduled time? A. That would be true.")).

Blue Bell's records support the stated reasons for his transfer. The company began tracking scheduled delivery time as compared to actual delivery time in 2009, and since that time, Plaintiff has ranked last or next to last among all Sylacauga-based drivers. Plaintiff's excess delivery time numbers and his ranking is as follows:

| Year | SDT Variance | Ranking |
|------|-------------|---------|
| 2009 | +267.26 hours | Last |
| 2010 | +162.21 hours | Last |
| 2011 | +177.90 hours | Last |

|      |              |                          |
|------|--------------|--------------------------|
| 2012 | +127.31 hours | Next to last             |
| 2013 | +129.81 hours | Next to last             |
| 2014 | +59.22 hours  | Next to last (partial year) |

(Doc. 53-1 at 3-4, ¶7; and doc. 53-1 at 12-26).[7] The individual who was last in 2012, 2013, and for the full year 2014 was also an African-American individual named Tim McGregor. Regarding the Plaintiff's performance as a truck driver, the following

---

[7] The Plaintiff does not dispute these figures. Instead, he writes:

> Disputed. Before his demotion the Plaintiff shared with the Defendant that his deliveries took more time because of his need to take frequent restroom breaks, which was a by-product of his diabetes. [Strong Dep. p. 13: ln. 17-p. 14: ln. 22]. At the time the Plaintiff weighed in excess of four-hundred pound [400 lbs.]. [Strong Dep. p. 52: lns. 1-13].

(Doc. 59 at 2, ¶5). The Plaintiff's alleged disability is not an issue in this case as that claim has been dismissed. Even if the reason for his late times was his diabetes, the fact should not have been disputed. He was still late.

The Plaintiff disputes the documentation cited in support of these figures. (*See* doc. 59 at 2-5, ¶¶6-11). His objection to one reads:

> Disputed, as the Plaintiff has no personal knowledge of the document offered as evidence. F.R.E. 602. Furthermore, the Defendant's officials cited for this proposition are interested witnesses whose credibility on this and other material facts is at issue in this case. *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 151 (2000) ("[T]he court should give credence to the 'evidence favoring the non-movant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses.'" ); *Hinson v. Clinch County*, 231 F.2d 821, (11th Cir. 2000) (same).

(*See* doc. 59 at 2-5, ¶¶6-11). As shown previously (*see supra* note 4), this objection is without merit. The Plaintiff used this same objection in several other places in his response. All such objections are **OVERRULED**, and the fact that the Plaintiff objected to shall be deemed admitted unless ad additional objection was asserted.

exchange took place in the Plaintiff's deposition:

Q. Do you know of any other drivers whose difference was equal to or worse than yours?

A. Yes, sir.

Q. All right. Tell me who.

A. Tim McGregor.

* * *

Q. Tim McGregor. Now, he is another African-American, right?

A. Uh-huh.

Q. Anyone else other than Mr. McGregor who you think whose driving record was -- we will just say was similar to yours?

A. We had Casey Cook.

Q. Casey Cook. All right. Anyone else?

A. It was a few more guys, but I can't remember their name at the time. I can't remember their name at the time.

Q. What do you know about Mr. Cook's driving record as compared to yours?

A. There is times when it has been greater than mine.

Q. Are you able to tell us when?

A. No, sir.

Q. What is his race?

A. Black.

(Doc. 53-2 at 12(43-44)).

On March 8, 2013, the Plaintiff received a First Written Warning for unsatisfactory performance, including being late for deliveries and exceeding average delivery time. (Doc. 53-1 at 6, ¶9(l); doc. 53-1 at 50). On February 28, 2014, the Plaintiff received a Second Written Warning for not accurately logging his stops and taking too much time completing his trips. ((Doc. 53-1 at 7, ¶ 9(r); doc. 53-1 at 62).[8] On March 6, 2014, the Plaintiff received a Third Written Warning and a two-day suspension for numerous stops, not accurately logging his stops, and taking too much time to complete his runs. (Doc. 53-1 at 7, ¶ 9(s); doc. 53-1 at 64). The warning Plaintiff received on March 6, 2014, contained a final warning that any further infractions would result in the discharge of his employment. Furthermore, in his declaration, Crane states that

> the Sylacauga plant management received complaints in March 2013, February 2014 and May 2014 from Blue Bell's wholesale facilities about Strong sleeping at branches during deliveries and being constantly late for deliveries. We also received complaints from members of the public in January and March 2014 about his erratic driving, weaving in and out of

---

[8] The Plaintiff disputes this fact saying that in his deposition he "did not recall receiving the discipline." (Doc. 59 at 11). This is not a "dispute" that the discipline occurred. The Court **OVERRULES** all such objections in the Plaintiff's response and the fact that the Plaintiff objected to shall be deemed admitted unless another objection was asserted.

his lane.

(Doc. 53-1 at 8, ¶10; doc. 53-1 at 66-68).

In the Plaintiff's deposition, the following exchange took place:

Q. [T]alking about your move from 14 truck driver to palletizer, what evidence or basis do you have for saying that you think that occurred because of your race?

A. Because we had a guy that -- named Tony Davis that we all signed a transcript that all of the truck drivers signed that said if you ever be on your cell phone that you would get, you know, fired, terminated. And he got a ticket for being on his cell phone. And Jim Crace made sure he got -- he went down to production and got a job, he didn't terminate him. So when they got ready to demote me, he wanted to put me in palletizing knowing I couldn't do the job, you know, my medical, you know, field or whatever, but he knew I couldn't perform the tasks that I was supposed to perform.

Q. All right. So if I understand your testimony, part of your evidence is that this person, Tony Davis -- what is his race?

A. White.

Q. -- that he did an offense that he should have been terminated for?

A. Yes, sir.

Q. And was not?

A. Yes, sir.

Q. Instead, they found him a job in production, right?

A. Yes, sir.

(Doc. 53-2 at 8(25-26)).

On May 14, 2014, the Plaintiff was only clocked in for 26 minutes before leaving work, and he received pay for a half day of vacation. The Plaintiff took off the next five working days (May 15, 16, 17, 20, and 21) as vacation days. The Plaintiff reported to work on May 22, 2014, and worked that day and the next day, May 23, 2014. The Plaintiff was clocked in for approximately nine hours on both May 22 and May 23, 2014.[9] Beginning May 24, 2014, the Plaintiff did not report to work again. Plaintiff only worked two days in the Palletizer position.[10]

---

[9] The Plaintiff disputes the documentation cited in support of these figures. (*See* doc. 59 at 8, ¶30). His objection reads:

> Disputed, as the Plaintiff has no personal knowledge of the document offered as evidence. F.R.E. 602. Furthermore, the Defendant's officials cited for this proposition are interested witnesses whose credibility on this and other material facts is at issue in this case. *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 151 (2000) ("[T]he court should give credence to the 'evidence favoring the non-movant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses.'" ); *Hinson v. Clinch County*, 231 F.2d 821, (11th Cir. 2000) (same).

(*See* doc. 59 at 8, ¶30). For the reasons previously stated (*see supra* note 4), this objection is without merit.

[10] The Court has omitted any discussion of Defendant's proffered facts numbers 33 through 49 since those facts relate to discipline issues unrelated to the Defendant's stated reasons for transferring the Plaintiff. The Court has also omitted from this opinion all of the Plaintiff's proffered facts which relate to his diabetes and the conditions under which he had to work as a palletizer. (*See* doc. 59 at 14-17, ¶¶2-4, 10-11, 18-23). As noted at the beginning of this opinion, the only claim remaining is that, because of his race, the Plaintiff was placed into a position that did not pay him overtime. For the same reason, the Court has omitted the Plaintiff's proffered facts relating to how the Defendant treated him while he was a truck driver. (*See* doc. 59 at 14-

## IV. ANALYSIS

The Plaintiff alleges that his reassignment to the position of palletizer was a demotion based on his race, in violation of Title VII and Section 1981. The Eleventh Circuit has stated:

> Where . . . an employee attempts to prove discriminatory intent by circumstantial evidence, the claims are subject to the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). The plaintiff has the initial burden to establish a prima facie case of disparate treatment. To establish a prima facie case of disparate treatment, the plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees outside of her class more favorably; and (4) she was qualified to do the job. *McCann v. Tillman,* 526 F.3d 1370, 1373 (11th Cir.2008). If the plaintiff establishes a prima facie case, then the employer must articulate a legitimate, nondiscriminatory reason for discharging the employee. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir.2004). If the employer meet its burden, then the plaintiff must offer evidence that the alleged reasons for the employer's actions are a pretext for illegal discrimination. *Id.*

*Stinson v. Pub. Serv. Tel. Co.*, 486 F. App'x 8, 9–10 (11th Cir. 2012) (footnote omitted). "'The *McDonnell Douglas* scheme for the allocation of burdens and the order of presentation of proof also applies in [Section] 1981 cases involving discriminatory treatment in employment situations.'" *Stinson*, 486 F. App'x at 10, n. 1 (quoting *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060 (11th Cir.1994)).

The Defendant argues that the Plaintiff cannot satisfy his initial burden of establishing a prima facie case of discrimination because he cannot show that his

---

15, ¶¶5-7).

reassignment to the palletizer position was an "adverse employment action." To qualify

as an adverse employment action

> an employer's conduct that falls short of "an ultimate employment
> decision, must, in some substantial way, alter the employee's
> compensation, terms, conditions, or privileges of employment, deprive
> him or her of employment opportunities, or adversely affect his or her
> status as an employee." [*Crawford v. Carroll*, 529 F.3d 961, 970 (11th
> Cir.2008)] (alterations and internal quotation marks omitted). Specifically,
> a Title VII claim requires the employee to establish that he experienced
> "a serious and material change in the terms, conditions, or privileges of
> employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239
> (11th Cir.2001).

*Medearis v. CVS Pharmacy, Inc.*, 646 F. App'x 891, 897 (11th Cir. 2016). The Plaintiff

states that the move to the palletizer position is an adverse employment action because

the Plaintiff was denied overtime in his new job.[11]

Transferring a Plaintiff from a position in which he could earn overtime into

another where he could not is an adverse employment action. *See Bass v. Bd. of Cty.*

*Comm'rs, Orange Cty., Fla.*, 256 F.3d 1095, 1118 (11th Cir. 2001) ("The Division's

actions which deprived Bass of compensation which he otherwise would have earned

clearly constitute adverse employment actions for purposes of Title VII"); *Shannon v.*

---

[11] The Court rejects any portion of the Plaintiff's brief in response to the Motion to the
extent that it could be construed as arguing that the transfer was an adverse employment action
because of the conditions under which the Plaintiff was expected to work. Again, the only claim
remaining is that, because of his race, the Plaintiff was placed into a position that did not pay him
overtime.

*Bellsouth Telecommunications, Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) ("Shannon also presented evidence that in retaliation he was 'totally blackballed' from overtime.")[12]; *McCann v. Mobile Cty. Pers. Bd.*, No. CIV A. 05-0364-WS-B, 2006 WL 1867486, at *6, n. 9 (S.D. Ala. July 6, 2006),(Steele, J.)[13] (citing *Bass* and *Shannon* for the proposition that "[t]here is no question but that an exclusion from overtime opportunities constitutes an adverse employment action."); *Collins v. Miami-Dade Cty.*, 361 F. Supp. 2d 1362, 1372 (S.D. Fla. 2005) (Jordan, J.) ("The Eleventh Circuit has held that, in certain instances, denial of a right to overtime constitutes an adverse employment action."); *Moore v. Miami-Dade Cty.*, No. 03-22421-CIVGOLD, 2005 WL 3273722, at *11 (S.D. Fla. Sept. 30, 2005) (Simonton, M.J.) (same). This Court addressed this same argument in its previous opinion on the first Motion for Summary judgment saying:

> The Plaintiff did not have to speculate as to whether he would make less money in the new position– the Defendant told him he would not. The Defendant told Strong that he was being moved "because of

---

[12] The Defendant argues:

> Plaintiff incorrectly argues that *Shannon v. Bellsouth Telecommunications, Inc.*, 292 F.3d 712, 716 (11th Cir. 2002), stands for an unequivocal holding of the Eleventh Circuit that "denial of overtime is an 'adverse employment action.'"

(Doc. 40 at 6). As shown above, *Bass* and *Shannon* both provide support for the proposition that denial of overtime is an adverse employment action.

[13] *Aff'd sub nom. McCann v. Tillman*, 526 F.3d 1370 (11th Cir. 2008).

working too much overtime." (Doc. 39-1 at 3, ¶8). Further, the Defendant told him that in his new position he would not receive any more overtime. (Doc. 39-1 at 3-4, ¶9). Defendant has provided the Court with no authority that the Plaintiff, under such circumstances, had to work an entire week in the new job before he could claim that transferring him to the new position was an adverse employment action. Further, the Defendant offers no evidence, nor does it even argue, that the Plaintiff could have in fact earned overtime in his new position.

(Doc. 41 at 11-12) (footnote omitted) (emphasis in original).

In response to the new Motion, the Plaintiff argues that "[w]hen Strong tendered his resignation, he was being paid $12.00 per hour as a Palletizer, with the admonition that if he worked any overtime he would be terminated. Strong's pay went from $3,360.00 per month to $1,920.00 per month, which was a forty-percent reduction in pay." (Doc. 59 at 21). There is no evidence that the Plaintiff's received "a forty percent reduction in pay." He only worked 2 days in his new position. Assuming, as this Court must, that Crace told the Plaintiff that he could not work overtime in the new position, the undisputed evidence with respect to this second Motion for Summary Judgment shows that employees in that position regularly received overtime, and that Crace had scheduled the Plaintiff to receive it as well. Furthermore, he actually worked nine scheduled hours each of the two days he worked, suggesting that, if he had stayed on, he would have earned overtime. In spite of Crace's statements, the transfer to the palletizer position was not an adverse employment action.

The Court acknowledges the Eleventh Circuit's admonition that

> establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case. Accordingly, [a] plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case.
>
> Rather, the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent.

*Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). The Plaintiff has offered no circumstantial evidence in this case creating a triable issue concerning the Defendant's motivation. Still, the Plaintiff cites the above quote from *Smith*, and then attempts to compare the Plaintiff with another driver, Tony Davis, who was white. (Doc., 59 at 19-20). However, even the Plaintiff recognizes that he and Davis were both treated the same–they were each transferred from a truck driver position to a warehouse position. Second, "[t]he plaintiff and the employee [he] identifies as a comparator must be similarly situated in all relevant respects. The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (internal quotations and citations omitted). Davis and the Plaintiff are not nearly identical. They were each transferred for different reasons–the Plaintiff for his performance, and Davis for violation of the company cell phone policy. Also, the

Plaintiff argues that the position he was transferred into was worse because it was physically demanding and he could not earn overtime. However, he offers no evidence as to the nature of the work or pay for the position into which <u>Davis</u> was transferred. Furthermore, this Court has already dismissed any claims based upon the conditions under which the Plaintiff was expected to work, and the evidence shows that the Plaintiff <u>could have</u>, and indeed <u>would have</u> worked overtime if he had stayed in the palletizer position.

Finally, even assuming that the Plaintiff could establish a prima facie case of discrimination, he has not rebutted, indeed he has not even tried to rebut, the Defendant's legitimate non-discriminatory reason that he was moved to the palletizer position–the Plaintiff's excess delivery time numbers combined with the complaints regarding his conduct.

## V.    CONCLUSION

Based on the foregoing, the Defendant's Second Motion for Summary Judgment will be **GRANTED**, and this case will be **DISMISSED with prejudice**. A Final Order will be entered.

**DONE** this 2nd day of February, 2018.

**VIRGINIA EMERSON HOPKINS**
United States District Judge